## *In re* REFIOR'S ESTATE.

1. WITNESSES—AN HEIR PRESENTING CLAIM AGAINST ESTATE IS AN OPPOSITE PARTY—STATUTES.

> That claimant against an estate for services rendered to deceased is also an heir, does not change the relationship as an opposite party, within the meaning of 3 Comp. Laws 1915, § 12553.[1]

2. SAME—ADMINISTRATOR DEFENDING ESTATE AGAINST CLAIM IS NOT OPPOSITE PARTY.

> An administrator who is defending an estate against a claim for services rendered to the deceased is not an opposite party, within the meaning of 3 Comp. Laws 1915, § 12553, and therefore is not barred from testifying in behalf of the estate to matters equally within the knowledge of the deceased.[2]

3. EXECUTORS AND ADMINISTRATORS—PARENT AND CHILD—SERVICES —EXISTENCE OF CONTRACT QUESTION FOR JURY.

> Whether there was a contract to pay claimant, a daughter of deceased, for her services rendered to him, *held*, under the evidence, a question for the jury.[3]

Error to Wayne; Tappan (Harvey), J., presiding. Submitted June 10, 1926.   (Docket No. 62.)   Decided July 22, 1926.

Alma O'Brien presented a claim against the estate of John Refior, deceased, for services rendered.   The claim was allowed by the commissioners, and Adolph Refior, administrator, appealed to the circuit court. Judgment for claimant.   Contestant brings error. Reversed.

[1]Witnesses, 40 Cyc. p. 2299 (Anno); [2]Id., 40 Cyc. pp. 2272, 2274; 51 L. R. A. (N. S.) 210; [3]Executors and Administrators, 24 C. J § 2191.

*Frank C. Rommeck* and *Frederick A. Schopp,* for appellant.

*George B. Murphy* and *Benjamin Alpert,* for appellee.

BIRD, C. J. John Refior was a long-time resident of Detroit. He owned a two-family flat where he and his wife resided, of about the value of $7,500. This was all the property he left. He had three children, Adolph Refior, Elizabeth Bregar, and Alma O'Brien. His wife died in 1918. He died intestate in September, 1924. Alma O'Brien took care of her parents in their last days. After the mother's death she moved in with her father and cared for him until he died. She filed a claim against her father's estate for her services. She was allowed $6,729.45 by the commissioners. Later, on appeal by Adolph Refior, the administrator, she recovered the sum of $6,060.

1. The principal question raised is the refusal of the trial court to allow Adolph, son and administrator, to testify in behalf of the estate to matters which were equally within the knowledge of the deceased. The statute in question, in part, provides:

"When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person." * * * 3 Comp. Laws 1915, § 12553.

This suit is defended by the estate. Alma O'Brien is the claimant, and, therefore, the opposite party. She is also an heir of the estate. She is not, however, appearing in this suit in the role of an heir but she is appearing as a claimant. The situation is no different, so far as this suit is concerned, than it would be were she a stranger. She is an

opposite party in this suit, and the fact that she is an heir does not change that relation.    Adolph Refior represents the estate.    He is not the opposite party. He is defending the estate, and, therefore, there is no statutory reason why he could not testify.    It will be observed that the statute excludes only the testimony of the opposite party.    The statute was passed to protect estates and not claimants, and there is nothing in the statute which denies the right of the administrator to testify in such event.    The matter has been heretofore passed upon by this court.    The rule is correctly stated by Mr. Potter in his work on Michigan Evidence, page 359:

"The disqualification applied to the opposite party and not to the heirs, etc.    'The opposite party' is not to be permitted to testify in his own behalf—in other words—in his own interest, as against one whose lips are closed by death.    The statute now prevents the party opposed to the heir from testifying, but it does not exclude the testimony of the heir.    The heirs may testify in favor of the estate.    Where, however, an heir is prosecuting a claim against an assign of the deceased he does not act as an heir, but antagonistic to the estate, or the assign thereof, which he seeks to deplete rather than to preserve, and, notwithstanding his relationship, he is an 'opposite party' within the meaning of the statute, because opposed to the estate."

Some of the cases supporting the text are:    *Pendill* v. *Neuberger,* 64 Mich. 220; *Hillman* v. *Schwenk,* 68 Mich. 293; *Latourette* v. *McKeon,* 104 Mich. 156; *Tabor* v. *Tabor,* 136 Mich. 255.

2. Did the trial court err in refusing to direct a verdict for appellant on the ground that no contract had been established?    Mrs. Steele, a long-time friend of the family, testified as follows:

"I had conversations with Mr. Refior in reference to arrangements with Alma for her services at the home on Wilkins street about five weeks after Mother Refior died, which was in 1918, and at which conversation

Alma was present.    Mr. Refior said if Alma would stay home and take care of him, as she had no home of her own, he would gladly give her the property for the care of himself, and Alma stated she would gladly take care of her father."

This testimony was corroborated by several neighbors and friends of the family.    The question was clearly one for the jury to determine whether a contract had been established.

For the error pointed out, the judgment must be reversed and a new trial granted, with costs to the defendant estate.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.